KITCHENS, Justice,
for the Court:
¶ 1. Christopher G. Holt was disbarred from the practice of law in the State of Mississippi by a complaint tribunal in April 2003.[1] The tribunal found that the Bar had proven the factual allegations of its formal complaint, and further found that Holt had violated certain Rules of Professional Conduct. Holt now seeks reinstatement to the practice of law pursuant to Rule 12 of the Mississippi Rules of Discipline, but the Bar opposes Holt’s petition for reinstatement. Finding that Holt is eligible for reinstatement to the practice of law, we grant the petition for reinstatement conditioned upon Holt’s taking and passing the Mississippi Bar Examination and the Multi-State Professional Responsibility Examination.

Facts and Procedural History

¶ 2. In April 2000, Holt was retained by William J. Hendley to represent his son, Nathan Hendley, in a criminal drug charge. The elder Hendley, a resident of Georgia, wired $5,000 from his bank in Georgia to Holt as an initial fee for legal services. On April 4, 2000, Mr. Hendley provided an additional $2,500 in cash to Holt to secure his son’s release on bail from the Rankin County Jail. Three weeks later, Mr. Hendley wired an additional payment of $5,200 to Holt for the bond premium. Nathan’s bond initially was set at $75,000, which would have required a ten-percent premium payment, or $7,500. Holt was able to have the bail reduced to $25,000, thus lowering the ten-percent premium to $2,500. Ultimately, the total cost of the bond was $2,785, leaving $4,825 in client funds unaccounted for by Holt. After requesting a $4,825 refund from Holt and not receiving it, Mr. Hendley filed a complaint with the Mississippi Bar, alleging that Holt had not provided an accounting of the funds in question and that Holt had taken his money.
¶ 3. Following an investigation, the Bar filed a formal complaint against Holt, alleging violations of the Mississippi Rules of Professional Conduct. During the hearing conducted by the tribunal, Mr. Hendley testified that the sole purpose of the funds provided to Holt, other than the initial $5,000 attorney fee, was to pay the bond premium. He further testified that he expressly had prohibited use of any bond premium funds as legal fees for his son’s eodefendant, Melvin L. Spraggs. However, when Holt testified before the complaint tribunal, he claimed that he and Mr. Hendley had an agreement that all excess money left from the payment of the bond premium was to be used for the defense of Spraggs. No evidence was offered to sup *12 port the contention that Holt actually had used the funds at issue to defend Spraggs, nor was any evidence or testimony provided that Holt ever had represented Spraggs in a professional capacity.
¶ 4. The tribunal found Holt’s testimony “questionable at best,” accepting instead the version of the facts at issue presented by Mr. Hendley. The tribunal also heard testimony that Holt was uncooperative throughout the Bar’s investigation in that Holt had failed to file a timely response to the formal complaint, even after receiving two extensions of time and three demand letters. Other aggravating factors presented included Holt’s prior disciplinary record of three informal admonitions, two private reprimands, and three public reprimands.
¶ 5. The tribunal found that Holt had violated Mississippi Rules of Professional Conduct 1.15(c), 8.1(b), and 8.4(a), (c), (d), and, for those violations, he was disbarred from the practice of law in Mississippi. In addition, he was ordered to refund $4,825 to William Hendley within thirty days of the order, to pay the Bar a sum of $16.59 for costs and expenses occasioned by the litigation of the complaint, to notify all clients and opposing counsel of his disbarment within fourteen days of the order, and to return all files, papers, and money belonging to his Mississippi clients within thirty days of the order.
¶ 6. On April 21, 2011, eight years after his disbarment, Holt filed with this Court the present Petition for Reinstatement to the Mississippi Bar. In response, the Bar took his deposition on May 5, 2011, to investigate further the claims made in his petition. On July 18, 2011, the Bar formally filed its recommendation to this Court that Holt’s petition for reinstatement be denied.
Discussion
¶ 7. This Court has exclusive and inherent jurisdiction over matters pertaining to attorney discipline and is the final judge in such proceedings. M.R.D. 1; James v. Miss. Bar, 962 So.2d 528 (Miss.2007); Shah v. Miss. Bar, 962 So.2d 514 (Miss.2007); Miss. Bar v. Robinson, 918 So.2d 1264 (Miss.2005). In matters of reinstatement, this Court has said:
We do not believe it requires a long period of discipline to effect a rehabilitation of character. A firm resolve to live a correct life evidenced by outward manifestation sufficient to convince a reasonable mind clearly that the person has reformed is only required. In restoring a disbarred attorney, the principal question is whether that particular attorney would be safe to assist in administering justice if readmitted....
Phillips v. Miss. Bar, 427 So.2d 1380, 1382 (Miss.1983) (quoting Ex Parte Marshall, 165 Miss. 523, 147 So. 791, 798 (1933)).
¶ 8. Reinstatement to the practice of law is procedurally governed by Rule 12 of the Mississippi Rules of Discipline, which provides in part that persons disbarred for a period of longer than six months may be reinstated only by petition to this Court. It also dictates that the petition for reinstatement “shall not be filed until three (3) years after the date of the order of disbarment became final.” M.R.D. 12.1. Following the petition for reinstatement, Rule 12.8 requires that the Court allow thirty days for the Board of Bar Commissioners to conduct an investigation and fully answer the petition. Following the answer of the Bar, the proceedings shall continue, and the “Court, in its discretion, may grant or deny the petition as circumstances and justice require.” Id. Rule 12.7 and this Court’s holding in In re Benson, 890 So.2d 888, 890 (Miss.2004), list certain jurisdictional requirements which must be pled and met by the petitioner in his petition for reinstatement. *13 The requirements which the petitioner must address are: (1) state the cause for suspension; (2) give the name and current address of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct; (3) make full amends and restitution, (4) show that he has the necessary moral character for the practice of law; and (5) demonstrate the requisite legal education to be reinstated to the privilege of practicing law. Id. This Court has further held that the Bar’s position regarding reinstatement may be considered as a factor in determining whether to grant or deny the petition, but to do so is not a jurisdictional requirement. Id. at 890.

(1)State the came for suspension.

¶ 9. Holt cites the incident involving Mr. Hendley and his misappropriation of client funds as the reason for his 2003 disbarment. Additionally, he discusses his previous disciplinary record with the Mississippi Bar and his failure to cooperate with its investigation. He states that the Hendley matter, which led to his disbarment, was a direct result of his battle with alcoholism. He also says that he was in treatment at the time the formal complaint was served on him, concedes that he was not fit to practice law at the time of his disbarment, and admits that he relapsed into his addiction upon receiving word of his formal disbarment. However, in- July of 2004, he entered treatment at the Salvation Army Adult Rehabilitation Center and successfully completed what he describes as a nine-month, in-house treatment program.
¶ 10. The Bar finds that Holt’s petition fails specifically to admit responsibility for the conduct that resulted in his disbarment, saying he merely recited the findings of the complaint tribunal. Further, the Bar cites the record of his deposition and finds fault with his inability to recall the details of his alleged representation of Spraggs, the codefendant of Nathan Hendley. At the initial trial before the complaint tribunal, Holt testified that the parties agreed for the funds in question to be used for his representation of Spraggs. During Holt’s deposition, he admitted that he “took it upon [himself] to hold [Mr. Spraggs’s] hand so that he would not become a witness against Nathan.” Additionally, he could not recall when his representation of Spraggs ended or the ultimate result of the charges against him; but in an addendum, filed following his deposition, Holt clarified that new counsel assumed representation of Spraggs, and that the matter ultimately was resolved.
¶ 11. With respect, w;e do not agree with the Bar’s finding that Holt failed to admit responsibility for his misconduct. To the contrary, in his petition for reinstatement, he sufficiently states the reason for his suspension while expressing great regret for his actions. Further, Holt provides substantial information about his struggle with alcoholism, not in an effort to excuse his conduct, but rather as a means of explaining the circumstances surrounding his transgressions. Therefore, Holt has met the first jurisdictional requirement for reinstatement.

(2) Give the name and current address of all persons, parties, firms, or legal entities who suffered pecuniary loss due to the improper conduct.

¶ 12. In his petition, Holt lists Mr. Hendley as the person who suffered pecuniary loss as a result of his actions. He also testified in his deposition with the Bar that Mr. Hendley was the only client[2] who *14 suffered a pecuniary loss as a result of his misconduct.
¶ 13. The Bar, during the course of an investigation conducted after the petition for reinstatement was filed, identified other persons whom it opines “may” have suffered pecuniary loss due to Holt’s misconduct. The Bar found that Holt remained listed as the attorney of record in two bankruptcy matters following the date of his disbarment. The first of those matters initially was filed in 1996, but remained open and active until 2004. The second matter referenced by the Bar also was filed in 1996, and was pending at the time of the disbarment, with pleadings being disseminated to the parties after the date of disbarment. The Bar brought these two matters to Holt’s attention during his deposition, and he responded that he could not recall the specifics of the cases, or whether he had received any documents related to them. He did contend that he had no contact with the clients or their cases following his disbarment. Further, Holt admitted that he had, in fact, failed to notify his clients or any courts of his disbarment, as was required by the tribunal in its order. The Bar reasons that since Mr. Holt cannot completely recall the details of the two bankruptcy actions, he therefore is not able to state with certainty whether those clients suffered any pecuniary loss as a result of his actions.
¶ 14. We do not agree with the Bar’s rationale on this issue. Holt candidly admitted that he had failed to notify his clients or any courts of his disbarment. He further admitted having had no contact with the referenced cases or clients, and court documents reflect that he neither filed documents nor made appearances in the referenced matters after his disbarment. The cases with which the Bar takes issue were filed when Holt was a licensed, practicing attorney, • each had been open for a number of years at the time of his disbarment, and Holt made no inappropriate representation to a court in those matters. We do not agree with the Bar that Holt’s inability to “directly recall” what became of those clients necessarily renders him incapable of stating whether any other parties suffered pecuniary losses due to his misconduct. The dissent would require that Holt provide an accounting of losses that may have been suffered by those clients. However, to place such a burden on Holt is not only impractical, but likely impossible. The matters before the bankruptcy court occurred many years ago. To require that Holt contact former clients, who may harbor ill feelings toward him, is to inject Holt into their private lives in an effort to ascertain the sort of information which most people would no longer have, even if they ever had it at all. None of Holt’s former clients, with the notable exception of William J. Hendley, has asserted a claim against Holt. To dispatch Holt on an expedition to locate and visit people from his distant past to whom he “may” be indebted would not be likely to produce information of sufficient reliability for the preparation of an accounting to be submitted to the Bar or to the Supreme Court.
¶ 15. Holt was disbarred following a complaint made by Mr. Hendley for the misappropriation of client funds, and for this Holt accepts responsibility and has made restitution. The matters recently discovered by the Bar are unproven and are comparatively insignificant to the question of pecuniary losses suffered by clients. Holt candidly admitted his failure to comply with the tribunal’s order to notify clients and courts of his disbarment and, although an egregious omission at the *15 time, is not difficult to understand in the light of Holt’s difficult struggle with alcohol during that period of his life. It is of little if any importance to his present fitness to practice law, and we find that Holt has met the second jurisdictional requirement for reinstatement.

(3) Make full amends and restitution.

¶ 16. Holt says that he repaid $4,825 to Mr. Hendley on September 17, 2009. He also reports that he paid $16.59 to the Mississippi State Bar for costs in this matter, as was required of him by the tribunal in its order.
¶ 17. The Bar points to the fact that, while Holt did ultimately make amends to Mr. Hendley, the order required that full restitution be made within thirty days of April 29, 2003. Holt did not reimburse Mr. Hendley until nearly six years after his disbarment. For this reason, the Bar finds that Holt has not made Mr. Hendley whole. The Bar relies on this Court’s discussion in In Re Watkins, 849 So.2d 843, 847 (Miss.2002), and finds that Holt has failed to “make complete and total restitution to all parties who suffered a pecuniary loss” as is required for reinstatement, because he failed to pay interest on the amount owed, and he deprived Mr. Hendley of the use of the funds for six years.
¶ 18. We disagree with the Bar’s position on this issue. Watkins establishes no requirement that interest be paid on reimbursed funds. The requirement is merely to make full restitution to all parties who suffered a pecuniary loss. The pecuniary loss in this matter was $4,825. The decisions of this Court have never created a further necessity that interest and inflation be taken into account when measuring restitution. , Thus, Holt has satisfied the third jurisdictional requirement necessary for reinstatement.

(h) Show that he has the necessary moral character for the practice of law.

¶ 19. While good moral character is but one of five jurisdictional requirements to be weighed in determining reinstatement to the practice of law, this Court previously has held that “[t]he declarations of the person whose reformation is urged are worthy of solemn consideration, but more so are his overt acts and habits which disclose any professed changes in his moral attitude, practical beliefs and conduct.” Miss. State Bar Assoc, v. Wade, 250 Miss. 625, 167 So.2d 648, 650 (1964). In support of this requirement, Holt extensively cites his work history following disbarment, his involvement with charitable activities, and his rehabilitation from alcoholism. Additionally, Holt has provided this Court twenty-three letters of recommendation to support his claim that he is possessed of sound moral character.
¶ 20. The Bar makes the argument that Holt’s petition for reinstatement does not satisfy this jurisdictional requirement, and that he is unfit to practice law based on the Bar’s contention that Holt may have been unlawfully providing legal advice to individuals during the period of his disbarment. The Bar makes this finding from vague references to Holt’s legal proficiency and knowledge of the judicial process found within some of the letters of recommendation submitted to this Court.
¶ 21. The Bar also finds that Holt may not be suitable for the practice of law due to his grave financial situation. Holt testified in his deposition that he has several outstanding judgments against him, a large sum of debt accumulated in his name, and that he has no real means or plan for paying it down. The Bar finds that these financial matters may prohibit him from effectively establishing a career, or assisting clients, and that Holt’s finan *16 cial situation is of particular concern, given that the mishandling of client funds was the initial reason for his disbarment.
¶ 22. The letters of recommendation Holt provided came from various people with whom he has had interaction since his rehabilitation from alcoholism. The majority of the letters are from coworkers, employers, and individuals whom he has counseled in his capacity as a drug-addiction counselor. The references to legal advice that the Bar cites in its response are general statements of Holt’s knowledge of the legal process and his ability to understand and sympathize with people who are caught up in legal matters. No direct or definitive statements were made that Holt unlawfully offered legal advice, and the Bar conducted no investigation of this issue. ,
¶23. As for Holt’s present financial difficulties, we do not find that they have significant bearing on his moral fitness to practice law. The dissent would require Holt meticulously to document all of his debts, as well as liens and judgments against him, and craft a plan for full payment of each and all of those obligations. While at first blush this may seem to be a laudable idea, in reality, it is impractical and likely would be fraught with unpleasant complications, not only for Holt, but also for numerous people whose lives would be disturbed and intruded upon by the process of compiling and documenting elusive financial data which is as much as fifteen or twenty years old. It is clear from the record before us that much of the debt and financial-loss information, especially amounts that he “may” be morally if not legally obligated to pay to people with whom he had professional dealings a decade or two ago, is not readily available to Holt, and could not be ascertained without his communicating with them directly. It is not unlikely that some, if not all, of those persons would consider contacts by or on behalf of Holt to be unpleasant and unwelcome. With regard to enrolled judgments and tax liens, those amounts already are well documented and known to the Bar. Thus, the additional hoop through which the dissent would ask Holt to jump would require his tracking down and reestablishing contact with individuals who may prefer to be left alone by Holt. As for Holt’s formulating a repayment plan, such a requirement is woefully lacking in feasibility, considering that he has been unable to service his debt fully on his current income, and he appears to have no realistic prospect of increasing his income unless he can resume the practice of law. Even with the restoration of his law license, there is no way for him reliably to predict what his future income will be. It is elementary that, in order to craft a debt repayment plan, one not only must know the amount of his debt, but also how much his future income and expenses likely will be. Thus, under the circumstances it is unreasonable for us to require Holt to prepare and submit a debt repayment plan, which, at best, would require considerable speculation, conjecture, and guesswork on his part. Moreover, the practical impossibility of his doing so has no demonstrable bearing upon his moral fitness to practice law.
¶ 24. Holt, in his petition for reinstatement, thoroughly discusses his battle with alcoholism and the measures he has taken to remain a sober, productive member of society. He details his work experiences as an addiction counselor and as a court-appointed guardian ad litem (GAL). His petition shows a consistent pattern of employment, involvement with charitable activities, and good moral behavior. For these reasons, Holt has successfully proven that he possesses sound moral character and' is now ready to return to the practice of law with a renewed sense of purpose.

*17
[5] Demonstrate the requisite legal education to be reinstated to the privilege of practicing law.

¶ 25. Holt has provided documentary evidence with his petition for reinstatement that he has earned 56.5 hours of continuing legal education. He also remained subscribed to the Mississippi Law Institute’s advance-sheet service, and has read the opinions of the Mississippi Supreme Court and Court of Appeals since October 2009. During the time since his disbarment, he also has undergone training with Court Appointed Special Advocates (CASA) in order to become a GAL. Through his training and work as a GAL, he has remained up to date on laws related to the protection of children, an area of practice he wishes to pursue further if permitted to be a lawyer. The Bar takes no issue with Holt’s satisfaction of this jurisdictional requirement for reinstatement.[3] Likewise, we find that Holt has satisfied the fifth and final jurisdictional requirement.

Conclusion

¶ 26. We find that Christopher G. Holt has satisfied the necessary jurisdictional requirements set forth by this Court and the Mississippi Rules of Professional Conduct for his reinstatement as an attorney at law. Holt has sufficiently acknowledged and taken responsibility for his disbarment, has made full restitution to those affected by his misconduct, has exhibited a pattern of sober, responsible behavior, and has shown that he possesses the necessary legal education and learning to practice law. Therefore, this Court holds that Holt’s petition for reinstatement to the practice of law should be granted on the condition that he take and pass the Mississippi Bar Examination as well as the Mul-ti-State Professional Responsibility Examination. M.R.D. 12.5.
¶ 27. PETITION OF CHRISTOPHER G. HOLT FOR REINSTATEMENT TO THE PRACTICE OF LAW IN THE STATE OF MISSISSIPPI IS GRANTED CONDITIONALLY ON HIS PASSAGE OF THE MISSISSIPPI BAR EXAMINATION AND THE MULTISTATE PROFESSIONAL RESPONSIBILITY EXAMINATION.
DICKINSON, P.J., CHANDLER, PIERCE AND KING, JJ., CONCUR. RANDOLPH, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND LAMAR, J.

. According to Mississippi Rule of Discipline 8(a), this Court "shall designate a Complaint Tribunal to hear and determine” all formal complaints. A complaint tribunal has the power to render written opinions which may reprimand, suspend, or disbar an attorney. M.R.D. 8(b).

. Here, the term client is broadly applied to include the elder Hendley, although his son *14 Nathan was Holt's actual client.

. Nevertheless, Holt’s reinstatement as a member of the Mississippi Bar will not occur until he has passed the Mississippi Bar Examination and the Multi-State Professional Responsibility Examination.